UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUTH ANN LEONARD,<br><br>　　　　Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:21-cv-00627-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 19). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding her application for Supplemental Security Income and disability benefits. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF No. 12).

Plaintiff presents the following issues:

A. Substantial Evidence does not support the ALJ's rejection of the only long-term treating and examining specialist's well-supported MRFC Medical Source Statement (MSS).

B. The [Mental Residual Functional Capacity (MRFC) assessment] is not supported by Substantial Evidence.

      C. The ALJ harmfully erred by failing to provide "clear and convincing" reasons for rejecting Ms. Leonard' symptomology evidence.

(ECF No. 19, p. 2). Having reviewed the record, administrative transcript, the briefs of the parties, and the applicable law, the Court finds as follows:

## I.    ANALYSIS

### A.    Medical Opinion of PA Randy Callahan

Plaintiff argues that the ALJ's decision to discount the opinion of a treating psychiatric provider, PA Randy Callahan, is not supported by substantial evidence. Because Plaintiff applied for benefits in November 2017, certain regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017, govern this case. 20 C.F.R. §§ 404.1520c, 416.920c. (AR 198-218). These regulations set "supportability" and "consistency" as "the most important factors" when determining an opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." 20 C.F.R. §§ 404.1520c(a)-(b); 416.920c(a)-(b).

As for the case authority preceding the new regulations that required an ALJ to provide clear and convincing or specific and legitimate reasons for rejecting certain medical opinions, the Ninth Circuit has concluded that it does not apply to claims governed by the new regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . ., including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial

evidence." *Id.* at 787. "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

In conjunction with this requirement, "[t]he agency must 'articulate . . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and 'explain how [it] considered the supportability and consistency factors' in reaching these findings, *id.* § 404.1520c(b)(2)." *Woods*, 32 F.4th at 792.

> Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence. *Id.* § 404.1520c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim. *Id.* § 404.1520c(c)(2).

*Id.* at 791-92.[1]

Keeping these standards in mind, the Court now considers the ALJ's reasons to deem PA Callahan's opinion "partially persuasive":

> On July 8, 2019, Randy J. Callahan, P.A. opined that the claimant had fair capacity in the following areas: understand, remember and carry out complex instructions; understand, remember and carry out simple instructions; and maintain concentration, attention and persistence. (Exhibit 5F/4). Mr. Callahan further opined that the claimant had poor abilities in the following areas: perform activities within a schedule and maintain regular attendance; complete a normal workday and workweek without interruptions from psychologically based symptoms; and respond appropriately to changes in a work setting. *Id.* The undersigned finds Mr. Callahan's opinion partially persuasive. His opinion concerning the claimant's "fair" abilities are generally consistent with the

---

[1] As the Ninth Circuit also noted, "The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id.* § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors." *Woods*, 32 F.4th at 792 (citing § 404.1520c(b)(2)). "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' *Id.* § 404.1520c(b)(3). In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id.* Here, there is no argument that the opinion at issue was found to be equally well-supported and consistent with the record as another but not exactly the same.

>moderate functional limitations found by the State agency psychological consultants. However, his opinion of "poor" abilities is not supported by his mental status examination contained within his evaluation. Specifically, the abnormal clinical findings were generally limited to abnormal mood and affect. *Id.* at 1-3. While Mr. Callahan notes that the claimant had visual hallucinations, he explained that these occurred "mostly at night" and they were improving. *Id.* at 2. Thus, his opinion essentially finding marked to extreme limitations is not supported by his own examination of the claimant. The undersigned finds his opinion of "poor" abilities is also inconsistent with the overall record. As discussed herein, the abnormal clinical signs on mental status examination were limited, the claimant reported improvement with medication, she did not require any inpatient psychiatric care, and she was able to perform a wide range of activities of daily living.

(A.R. 35-36).

The first reason given to discount PA Callahan's opinion is it was unsupported by his own examination. This reasoning invokes the supportability factor, which considers the relevant objective medical evidence and supporting explanations for a medical source opinion. Specifically, the ALJ concluded that the marked to extreme limitations that PA Callahan assessed were not supported by the fact that Plaintiff's hallucinations occurred mostly at night and were improving. While Plaintiff criticizes the ALJ for failing to explain how Plaintiff's hallucinations were "less inhibiting to functionality than if they occurred during the day," the Court believes that the ALJ's opinion can be reasonably construed as indicating that the hallucinations did not affect Plaintiff as much as PA Callahan opined because they occurred during a limited time period—mostly at night—rather than affecting Plaintiff throughout the day. (ECF No. 19, p. 10).

Regardless, the ALJ's additional rationale for why PA Callahan's opinion was unsupported—because Plaintiff's hallucinations improved—is an independently valid basis to discount PA Callahan's opinion. As the ALJ noted, PA Callahan's own report stated that the hallucinations were improving, which indicates that any limitations based on those hallucinations would lessen. (AR 35, citing 419 (Callahan report stating that visual hallucinations were "better")). Further, the ALJ's opinion elsewhere cites a medical record noting that Plaintiff's "hallucinations ha[d] stopped with the increase of Latuda to 80 mg."[2] (A.R. 32, citing 436).

---

[2] The ALJ acknowledged that the hallucinations returned after Plaintiff stopped taking her medication but noted that they again improved after she resumed her medication. (A.R. 32-33).

The next reason the ALJ gave to discount PA Callahan's opinion was that it was inconsistent with the overall record, specifically because abnormal clinical signs on mental status examination were limited, the Plaintiff reported improvement with medication, she did not require any inpatient psychiatric care, and she was able to perform a wide range of activities of daily living. This reasoning invokes the consistency factor, which considers whether a medical opinion is consistent with other evidence from medical and nonmedical sources. The ALJ's assessment is supported by the ALJ's "detailed and thorough summary of the facts and conflicting clinical evidence, . . .interpretation thereof, and . . . findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Importantly, as the ALJ noted elsewhere in the opinion, medical records showed that "clinical abnormalities were generally limited to abnormal mood and affect." (A.R. 32; *see* 344 (noting "anxious" mood but "no psychotic symptoms); 360 (noting an occasional "episode of moodiness" but "cognitive function [] within normal limits")). Moreover, the medical record supports the ALJ's conclusion that Plaintiff reported improvement with medication. (A.R. 352 (Plaintiff stated "that she feels so much better on the Depakote 750mg and Pristiq 100mg."); 436 (noting cessation of hallucinations with medication)).

While the Plaintiff criticizes the ALJ's notation—that Plaintiff did not require any inpatient psychiatric care—as a mischaracterization of the record, the Court finds no error. (ECF No. 19, p. 11). True, as Plaintiff points out, the record indicates that she tried to be admitted for psychiatric care but was denied admittance and that "her sister placed her on a 5150 hold and put her in a psychiatric hospital" but Plaintiff left.[3] (*Id.* at 11-12). However, the ALJ's opinion acknowledged both instances, with the opinion indicating that it was Plaintiff's failure to be

---

[3] A "5150 hold" refers to California's Welfare and Institutions Code § 5150(a), which provides: "When a person, as a result of a mental health disorder, is a danger to others, or to himself or herself, or gravely disabled, a peace officer, professional person in charge of a facility designated by the county for evaluation and treatment, member of the attending staff, as defined by regulation, of a facility designated by the county for evaluation and treatment, designated members of a mobile crisis team, or professional person designated by the county may, upon probable cause, take, or cause to be taken, the person into custody for a period of up to 72 hours for assessment, evaluation, and crisis intervention, or placement for evaluation and treatment in a facility designated by the county for evaluation and treatment and approved by the State Department of Health Care Services."

admitted for inpatient psychiatric care—despite there being a possible need for it—that was noteworthy. (*See* A.R. 33, ("While the undersigned recognizes that the claimant reportedly planned to go to the Community Behavioral Health Center after stopping all her medications and experiencing withdrawal symptoms, she was advised that she did not qualify for admission."); 32 (noting instance where Plaintiff's sister "called her in for a '51/50'")). Further, when considered in conjunction with the rest of the ALJ's reasoning, the ALJ's reliance on Plaintiff's daily activities—caring for her cat, preparing simple meals, cleaning, and sometimes administering her father's insulin, etc.—is a reasonable basis to discount the severe limitations assessed by PA Callahan. (A.R. 34).

Lastly, it is worth noting that the ALJ found to be mostly persuasive opinions from state agency psychologist consultants—Dr. Robert Scott and Dr. S. Khan—who opined that Plaintiff did not have more than moderate functional limitations. (A.R. 35, citing Exhibits 1A; 2A; 5A; 6A). Notably, the ALJ found these opinions supported by their review of the record and consistent with the overall record.

After viewing the ALJ's reasoning in light of the record as a whole, the Court concludes that the ALJ's decision to discount PA Callahan's opinion was supported by substantial evidence after consideration of the supportability and consistency factors.

### B.    MRFC Assessment

Plaintiff argues that the MRFC assessment is not based on substantial evidence. (ECF No. 19, p. 13). Here, the ALJ assessed Plaintiff's RFC as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: she can lift, carry, push, and pull 50 pounds occasionally and 25 pounds frequently; she can sit for 6 hours in an 8-hour workday; she can stand and walk 6 hours in an 8-hour workday; she can understand and remember simple instructions; she can sustain attention and concentration for 2-hour intervals to complete a regular workday at an acceptable pace and attendance schedule; she can interact adequately in casual settings and respond appropriately to constructive instructions in a work setting in which exposure to others is not too intense or prolonged, for example limited public contact; and she can respond to simple and infrequent changes in routine.

(A.R. 31).

Noting that the ALJ found to be mostly persuasive the opinions of state agency psychological consultants—who concluded that Plaintiff did not have more than moderate limitations—Plaintiff argues that, because these opinions failed to address some later medical records that became part of the overall record, the ALJ erred by not basing "the MRFC on any treating, examining or reviewing opinions of record who reviewed the entire record as a whole." (ECF No. 19, p. 12).

A claimant's RFC is "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). An ALJ's RFC assessment is not required to be based solely on medical opinion. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, . . . the RFC need not exactly match the opinion or findings of any particular medical source."). Likewise, "the fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence." *Maliha K. v. Saul*, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020). This is because "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020) (unpublished).

In light of these standards, the ALJ did not err in relying on the state agency consultants even though they did not have the opportunity to view later medical records. "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished). Here, the ALJ addressed the records post-dating the opinions of the state agency consultants, which, for example, address Plaintiff's hallucinations and Plaintiff's plan to seek psychiatric care after stopping her medications. (A.R. 32-33, citing 428). However, as noted above, the ALJ ultimately concluded that Plaintiff's lack of being admitted to in-patient care and improvement in mental

health symptoms did not support a more limited MRFC.

### C. Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ failed to provide clear and convincing reasons to reject her subjective complaints. (ECF No. 19, p. 14).

As to a plaintiff's subjective complaints, the Ninth Circuit has concluded as follows:

> Once the claimant produces medical evidence of an underlying impairment, the Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *see also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir. 1986) ("it is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be "clear and convincing." *Swenson v. Sullivan,* 876 F.2d 683, 687 (9th Cir. 1989). General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.

*Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995), *as amended* (Apr. 9, 1996). Additionally, an ALJ's reasoning as to subjective testimony "must be supported by substantial evidence in the record as a whole." *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir. 1995).

As an initial matter, the ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. 32). Accordingly, because there is no affirmative evidence showing that Plaintiff was malingering, the Court looks to the ALJ's decision for clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's symptom testimony.

The ALJ summarized Plaintiff's complaints and reasons for partially discounting them as follows:

> At the hearing, the claimant testified that she last worked in 2016 as a medical assistant. She was terminated because she clocked in by phone but was not at work. She did not look for another job because she was not ready, explaining that she felt like she had a nervous breakdown. She was not hospitalized for her nervous breakdown. A year ago, the claimant's sister called her in for a "51/50" because she wanted to hurt herself, but she got agitated and panicked and left the hospital. While she was working, she was diagnosed with bipolar disorder, depression, and ADHD. Since she stopped working, she was prescribed medication and received psychotherapy. She had appointments with her psychologist every 2 weeks for the past 6 months. The claimant lived with her

> parents in a garage they converted for her. Her father had diabetes and had part of his right foot amputated, but her mother was healthy. She did not drive. During the day, she isolated because she did not like to be around people. She watched television. On a good day, she tried to help around the house. She gave her father his insulin at times and went to the store with her mother at times. She did not cook her own meals. She did her own laundry. She had a couple of friends that she talked with over the phone. The claimant cried a lot every day. While she was working, she was also having crying spells. She was not keeping up at work. She was prescribed Soma and tramadol. Her medications helped "a little bit." She had adverse medication side effects of sleepiness and dizziness. She had insomnia and had to take naps during the day. She had 3 to 4 panic attacks a week. She saw shadows for over a year. Her medications did not help. The claimant had problems standing because she got "weak."
>
> . . . .
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, the evidence only partially supports her allegations. For instance, the claimant alleged that she was unable to work because she was agitated around others. (Testimony and Exhibit 4E). However, the treatment records do not indicate that she exhibited significant, ongoing abnormalities in psychomotor activity or behavior. Similarly, the mental status examinations show she was typically cooperative and polite. (Exhibit 2F; 3F; 6F). Additionally, the claimant's [daily] activities . . . support she can perform work within the residual functional capacity. Despite her reports that she isolated, she spent time with her parents, spoke on the phone with her friends and was able to maintain a long-term relationship with her significant other whom she saw 3 to 4 days a week. (Testimony and Exhibit 5E). Likewise, despite her difficulty being around others, she was able to shop in stores once a month. (Exhibit 4E). The claimant was also able to care for her cat, prepare simple meals, clean, wash her clothes, drive on good days, and administer her father's insulin at times. (Testimony and Exhibit 4E).

(A.R. 32, 33).

First, the ALJ correctly determined that there was a lack of objective medical evidence to support the degree of limitations that Plaintiff alleged. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Notably, the record did not indicate that she exhibited significant, ongoing abnormalities in psychomotor activity or behavior so as to conclude that she was unable to work. *See Lualemaga v. Berryhill*, No. ED CV 18-444-PLA, 2018 WL 6619745, at *8 (C.D. Cal. Dec. 18, 2018) (noting that it was

reasonable for the ALJ to discount a plaintiff's subjective mental health symptom testimony that was otherwise not supported by the record evidence).

Second, the ALJ did not err in discounting Plaintiff's subjective complaints as inconsistent with other evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (noting that conflicts between testimony and objective medical evidence supported discounting a plaintiff's credibility). Notably, Plaintiff's claims of being unable to work due to the agitation of being around others was undercut by her ability to socialize with others and go out in public, although the record does not fully address the degree with which she undertook these activities. *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), *superseded on other grounds by statute* (noting that "[e]ven where [a claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment"); (*see* A.R. 59). Moreover, as the ALJ reasonably observed, medical records document Plaintiff as being cooperative and polite during examinations and contained mostly normal mental status findings, which further discounts Plaintiff's testimony.

Accordingly, the Court concludes that the ALJ provided clear and convincing reasons, supported by substantial evidence, for not giving full weight to Plaintiff's subjective complaints.

**II.     CONCLUSION AND ORDER**

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. And the Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

Dated:  **September 9, 2022**          /s/ Erica P. Grosjean
                                                       UNITED STATES MAGISTRATE JUDGE